FILED
2020 May-19 PM 01:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UINTED STATES DITRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **EDWARD L. OSBORNE I,** )<br> )<br>  **PLAINTIFF,** )<br> )<br>VS. )<br> )<br>**JUDY B. HAYMON HOMES, INC.;** )<br>**AMBER STANLEY; & TARA BROWN,** )<br> )<br>  **DEFENDANTS.** ) | CASE NO:_____ |

## COMPLAINT

Comes now the Plaintiff, **EDWARD L. OSBORNE I** hereinafter referred to as Plaintiff by his attorney and says the following:

### I. PARTIES

1. The Plaintiff **EDWARD L. OSBORNE I** is a citizen of the United States and a resident of the State of Alabama. At all times relevant hereto Plaintiff Osborne was an employee for purposes of Title VII and had a right to work a lawful shift as defined by the Fair Labor Standards Act and Equal Pay Act.

2. The Defendant, **HAYMON HOMES** (hereinafter referred to as "Defendant or the Nursing Home"), is a sole proprietorship, partnership, corporation, or other governmental entity organized under the laws of Alabama and its principal place of business is 4693 Main Street Powell, Fyffe, AL 35971. It is also known as Judy B. Haymon Homes, Inc. At all times relevant hereto it was acting through Plaintiff Osborne's supervisors, co-employees and

managers. Specifically, defendant Haymon was acting through **AMBER STANLEY**, the plaintiff's immediate supervisor. Amber Stanley is a resident of Alabama and over the age of nineteen. It was also acting through **TARA BROWN**, Amber's supervisor, who is also the plaintiff's supervisor and the person who confirmed the termination of the plaintiff. Tara Brown is a resident of Alabama and over the age of nineteen. They are both being sued in their individual and official capacity.

## II.   JURISDICTION

3.  The Plaintiff alleges that the Defendant is subject to suit and engaged in conduct in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 2000(a), et. seq. and of the Civil Rights Acts of 1871, 1866 and 1964; Section 704(a) of the Civil Rights Act, the Fair Labor Standards Act; the Equal Pay Act of 1963; the Lily Ledbetter Act and their subsequent codifications and amendments.

4.  The Plaintiff has satisfied all jurisdictional prerequisites to filing this EEOC charge[1] (*Charge No. 420-2020-00154*) and has received the Notice of Right to Sue from the EEOC.

## III.   **FACTS**

5.  The Plaintiff reincorporates by reference as if fully set out herein, the allegations in paragraph's one through four

---

[1] *Although the charge did not result in a finding of cause, an undisclosed agency action was taken against the defendant as a result of said charge.*

of this complaint.

6. On or around July 2019, the Plaintiff was hired. He was classified as a residential rehabilitation aide. He and his supervisor, Amber Stanley, had a romantic relationship while he was employed and under her supervision. The relationship became "stale", the honeymoon was over and then Amber became a manager scorned.  Prior to her inappropriate post-honeymoon date invitation, the plaintiff's shift supervisor, Amber Stanley, would permit the plaintiff to ask off of long and unlawful shifts to take a mental break and would defend his right to the same with staff who inquired.

7. On July 18, 2019, Amber tried to make the plaintiff go on a date with her to see the Lion King.  She said she would only give the plaintiff an off day if I agreed to go on dates and on days that I agreed to go dates.  When I rejected her advance to go on a date, she called the plaintiff a Nigger. She later admitted to calling the plaintiff a "Nigga" in an email and confirmed her efforts to get the plaintiff alone.

8.  She then began attempting to force the plaintiff to work unlawful "graveyard shifts" and she refused to protect the plaintiff from racist and unruly patients. She summoned a male supervisor who raised his voice, cursed the plaintiff and threatened to fire the plaintiff if the plaintiff did not acquiesce in Amber's now unreasonable requests for the plaintiff to work twenty plus hour "graveyard shifts" and to work with the patient, Nick Perry, who would go on racists tirades against the

plaintiff, who called the plaintiff a nigger and who tried to kill the plaintiff by attempting to stab the plaintiff with a knife. On the next day, the plaintiff recorded a conversation with Amber where she admitted to using the slur. Haymon later fired the plaintiff, through defendant Tara Brown, because he rejected Amber's unwanted post-honeymoon advances, complained of Haymon supervisor's uses of racial epithets and racial and sexual harassment and complained of being required to work shifts that other similarly situated whites did not want to work.

9.   Throughout his time as a residential rehabilitation aide, the Plaintiff's supervisors and co-employees engaged in an intentional racially and sexually discriminatory scheme to give the Plaintiff the worst "graveyard shift" assignments, to refuse to acknowledge the Plaintiff's status, experience and accomplishments as a residential rehabilitation aide and to otherwise harass the Plaintiff with comments and actions that humiliated and otherwise demeaned the Plaintiff on the basis of his race, ethnicity and sex. The Plaintiff's white supervisor always subjected him to intimidation in the presence of white employees and the Plaintiff is held to a higher job performance standard than similarly situated white employees. (e.g. Plaintiff's supervisor shouts at the Plaintiff, "talks down" to the Plaintiff, publicly criticizes Plaintiff, makes fun of Plaintiff, etc.) Furthermore, the Plaintiff is and was paid less than similarly situated white residential rehabilitation aides

and given the least desired "graveyard shift" assignments while whites were given more desired standard day shifts.

10. At all times relevant hereto, Plaintiff had as much and/or more experience than his white counterparts as a residential rehabilitation aide and he was called upon to perform residential rehabilitation aide duties on any "graveyard shift" whenever a white residential rehabilitation aide is unavailable to work.

11. Additionally, Plaintiff always received and was scheduled for the unpopular, inflexible and most undesired "graveyard shifts" while his white counterparts received and were scheduled for the popular, flexible and most desired "standard shift". Finally, the Defendant added additional undesirable "graveyard shifts" to the Plaintiff's schedule, refused to adequately increase the Plaintiff's pay and classification and otherwise treated the Plaintiff with hostility and disdain in retaliation for and as a result of complaints about illegal and discriminatory behavior and harassment.

Based on the foregoing, the Defendant was subjected to a racially, gender and sexually hostile environment.

### IV. CONTINUING POLICY/PATTERN & PRACTICE OF DISCRIMINATION

12. From 2019 to present, the Defendant by and through the Plaintiff's supervisors, co-employees and Defendant's management developed and applied pay and shifts, scheduling and other employee policies in a manner that intentionally disadvantaged and discriminated against African American and

male residential rehabilitation aides and advantaged white residential rehabilitation aides; permitted supervisors to engage in romantic relationships with subordinates and permitted staff and clients to use racial epithets and openly discriminate against black employees; and permitted supervisors to exchange romantic favors for job benefits.

Consequently, defendant Nursing Home is in continuing violation of federal anti-discriminatory and anti-harassment laws.

## V. SUMMARY OF OTHER ILLEGAL ACTS (INTENTIONAL DISCRIMINATION, DISPARATE IMPACT, RETALIATION, HOSTILE ENVIRONMENT)

13. The Defendant's pay and shifts, scheduling and "graveyard shift" assignment policy has a disparate impact in that only African American male regular residential rehabilitation aide received lesser and inferior pay and shifts, benefits and scheduling flexibility where all white regular residential rehabilitation aides receive larger and superior pay and shifts, benefits and scheduling flexibility. This application and use of Defendants' policy is in violation of Title VII's & the Lilly Ledbetter Act's prohibition against intentional discrimination and disparate impact. The acts complained of state claims for both disparate treatment and disparate impact under the authority and guidelines set forth in Lewis v. City of Chicago, 08-974 (FEDSC).

14. The Defendants created a hostile racial and hostile sexual work environment, permitted its supervisor to demand a

quid quo pro from plaintiff for a date, permitted supervisors and clients to use racial epithets toward plaintiff and fired plaintiff because he complained about gender and race discrimination and sexual harassment.

15. The Defendants' long shifts violate labor laws and do not permit rest or meal breaks;

16. The Defendant Haymon produced a private picture without the plaintiff's consent in an attempt to exact "revenge porn" and to harass and humiliate him for filing an EEOC action and in violation of Alabama criminal and civil laws.

## VI. CAUSE(S) OF ACTION

### COUNT ONE – 42 U.S.C. § 2000, et. seq.
### (RACIAL DISCRIMINATION, GENDER DISCRIMINATION & HOSTILE WORK ENVIRONMENT)

17. The Plaintiff incorporates by reference paragraphs one through sixteen as if fully set out herein.

18. The plaintiff endured the fury of a woman scorned as his supervisor, Amber, reeled from the deterioration of her relationship with the plaintiff and extreme stress from dealing with racist animus from Amber and from nursing home residents to no avail with Haymon. In other words, Haymon refused to investigate or address his supervisor and nursing home patient's calling him a "nigger."

19. Also, at all times relevant herein, there was an absence of written or oral guidelines which foster the neutral resolution of adversarial complaints by employees similarly

situated to the Plaintiff. Instead, decisions about African American male residential rehabilitation aides were the result of the subjective judgment of a primarily white female management, supervisors and staff. There is no policy against or requirement to report consensual romantic relationships between supervisors and their subordinates.

20. After the unlawful denial of full benefits, pay and shifts and recognition as a full-fledged residential rehabilitation aide by his co-employees and supervisors, the Defendant Nursing Home ratified, confirmed, acquiesced in and, otherwise, adopted said discriminatory acts of the Plaintiff's co-employees and supervisors in failing to pay and provide reasonable shifts and acknowledge him as a full-fledged residential rehabilitation aide. Therefore, these violations constitute the policy of the Defendant Nursing Home and said policies are continuing.

21. The Plaintiff's past and present supervisors and co-employees were motivated by the Defendant Nursing Home, Stanley's and Brown's disdain, disrespect and/or insensitivity to African American male residential rehabilitation aides.

22. As a result of the Defendant Nursing Home, Stanley's and Brown's actions, Plaintiff suffered the following injuries: lost wages and benefits, extreme mental anguish, past present and future pain and suffering, past, present and future medical bills, lost profits, permanent injury, etc.

23. Additionally, the Defendant Nursing Home, Stanley's and Brown's discriminatory practices have adversely affected the Plaintiff by promoting and reinforcing racial stereotypes, badges of inferiority, and biases.

24. The Plaintiff seeks to redress the wrongs alleged herein for declaratory relief, other equitable relief, and damages, as well as other remedies which the cause of justice shall require. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendants' unlawful policies and practices unless enjoined by this Court.

### COUNT TWO – 42 U.S.C. § 1982

25. The Plaintiff re-alleges and incorporates by reference paragraphs one through twenty-four as if fully set out below.

26. The effect of the Defendants' discrimination as outlined herein has been to deprive the Plaintiff of the same right to enjoy property rights like similarly situated non-African American persons, in violation of 42 U.S.C. § 1982, as amended.

### COUNT THREE – 42 U.S.C. § 1981

27. The Plaintiff re-alleges and incorporates by reference paragraphs one through twenty-six as if fully set out below.

28. The effect of the Defendants' discrimination as outlined herein has been to deprive the Plaintiff of the same right to make and enforce contracts as is enjoyed by similarly situated non-African American persons, in

violation of 42 U.S.C. § 1981, as amended.

**COUNT FOUR – SEXUAL HARASSMENT & "QUID PRO QUO" (AMBER STANLEY & HAYMON THRU VICARIOUS LIABILITY)**

29. The Plaintiff re-alleges and incorporates by reference paragraphs one through twenty-eight as if fully set out below.

30. After the relationship went stale, Amber Stanley used her supervisor position to try and maintain and strengthen her relationship with the plaintiff. In one instance, she attempted to exchange an offer to go out on a date for a more favorable shift work assignment. When the plaintiff refused the date, she attempted to pin the unfavorable shift on him and then use it to get him upset and set him up to be fired.

**COUNT FIVE - LILLY LEDBETTER FAIR PAY ACT/EQUAL PAY ACT**

31. The Plaintiff re-alleges and incorporates by reference paragraphs one through thirty as if fully set out below.

32. The effect of the Defendants: discrimination as outlined above has been to deprive the Plaintiff of the right to equal pay and shifts with similarly situated non-African American persons in violation of the Lilly Ledbetter Fair Pay and shifts Act.

**COUNT SIX – RETALIATORY FIRING AND RETALIATORY USE OF ILLICIT PHOTOS (HAYMON HOMES, TARA BROWN & AMBER STANLEY)**

33. The plaintiff incorporates by reference paragraph's one through thirty-two as if fully set out herein.

34. The defendant fired him in retaliation for complaining about racial discrimination, sexual harassment and fair labor violations. The defendant Haymon and Stanley also used the relationship and intimate sexual details and illicit photos to attempt to discredit the plaintiff during the EEOC process.

35. The plaintiff expressly asks the defendant Nursing Home, Stanley and Brown to investigate claims that defendant Amber Stanley and her boss were attempting to set him up because he rejected both of their advances, because he was black and because he complained about clients who were assaulting him with racially derogatory banter.

36. These complaints were ignored and he was punished.

**COUNT SEVEN – DISPARATE DISCIPLINE (HAYMON HOMES & TARA BROWN)**

37. The plaintiff incorporates by reference paragraph's one through thirty-six as if fully set out herein.

38. The defendant Haymon and Tara Brown fired him for allegedly using profanity and being upset, but failed to discipline other Haymon employees for using profanity and shouting at the plaintiff and failed to discipline Amber and her boss for not reporting Amber's relationship with the plaintiff and for Amber using her supervisor role as a woman scorned to get the plaintiff fired and force a quid pro quo.

39. In a recording of his firing, the plaintiff is heard expressly asking the defendants' Tara Brown and Haymon to investigate claims that defendant Amber Stanley and her boss were attempting to set him up because he rejected some of their

advances, because he was black and because he complained about clients and Amber who were assaulting him with racially derogatory banter.

40. As such, his discipline was disparate, retaliatory and violated federal discriminatory law.

## COUNT EIGHT – FAIR LABOR STANDARDS ACT (HAYMON HOMES)

41. The Plaintiff incorporates by reference paragraphs one through forty as if fully set out herein.

42. The defendant Haymon unlawfully scheduled the plaintiff for more hours than permitted by law without proper rest periods, overtime pay and meal periods.

43. Also, at all times relevant herein, there was an absence of written or oral guidelines which foster the neutral resolution of adversarial complaints by employees similarly situated to the Plaintiff about labor violations.

44. The defendants Haymon, Amber and Tara Brown scheduled the plaintiff for almost twenty hours a day without allowing proper rest and meal breaks and without paying him lawful wages.

45. As a result of the Defendant's actions, Plaintiff suffered the following injuries: lost wages and benefits, extreme mental anguish, past present and future pain and suffering, past, present and future medical bills, lost profits, permanent injury, etc.

## COUNT NINE – INVASION OF PRIVACY & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

46. The Plaintiff incorporates by reference paragraphs one

through forty-five as if fully set out herein.

47. The defendant Haymon Homes produced personal and private photos of the plaintiff sent between he and his supervisor Amber Stanley. They produced the photos to embarrass and humiliate him and in violation of Alabama Code § 13A-6-230.

48. Hence, defendant Haymon and Amber Stanley are guilty of trampling on simple notions of privacy between two persons previously engaged in a romantic relationship. In other words, Haymon and Amber engaged in "revenge porn."

**COUNT TEN – FAILURE TO INVESTIGATE (HAYMON HOMES & AMBER STANLEY)**

49. The Plaintiff re-alleges and incorporates by reference paragraphs one through forty-eight as if fully set out below.

50. Defendant Haymon Homes failed to conduct any investigation of the plaintiff's claim that:

   a. his immediate supervisor was setting him up because he rebuffed a recent dating request and called him a nigger;

   b. his discipline was in retaliation for reporting that a nursing home patient routinely threatened him with physical and called him a "nigger";

   c. he was being unfairly targeted because of his race and gender.

51. The Defendant ratified, confirmed, acquiesced in and, otherwise, adopted said use of racial epithets, sexual quid pro quo by a supervisor, gender inequality in staffing and unlawful shifts and hours. Therefore, these violations constitute the policy of the Defendant and said policies are

continuing.

## VII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court will assume jurisdiction of this matter and:

1. Issue a finding that the Defendants policies, practices, procedures and customs are violative of the rights of the Plaintiff, as secured by 42 U.S.C.A. 1981, 42 U.S.C.A. 1982 and 42 U.S.C.A. 2000(e), et. seq, as amended, the Fair Labor Standards Act and Equal Pay and shifts Act and the Lilly Ledbetter Fair Pay and shifts Act.

2. Grant the Plaintiff such other relief as this cause may require, including compensatory damages, punitive damages, special damages, costs, attorney:s fees and expenses.

3. Enjoin the Defendant from continuing to engage in such discriminatory practices.

          Respectfully Submitted,

          <u>s/Lee Wendell Loder</u>
          Lee Wendell Loder
          Attorney for Plaintiff
          Loder, P.C.
          PO Box 13545
          Birmingham, Alabama 35202
          (205)326-0566

**<u>SERVE DEFENDANTS AT:</u>**
Haymon Homes
aka Judy B. Haymon Homes, Inc.
4693 Main Street Powell
Fyffe, AL 35971

        **PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**